UNITED STATES of America

v.

**"JAY" (being a black male approximately 20 to 30 years of age, whose identity is otherwise unknown to the Grand Jury).**

**Crim. A. No. 88–AR–136–S.**

United States District Court, N.D. Alabama, S.D.

Dec. 20, 1988.

Frank W. Donaldson, U.S. Atty., John Earnest, Jr., Asst. U.S. Atty., for U.S.

Roger C. Appell, Birmingham, Ala., for "Jay".

## MEMORANDUM OPINION AND ORDER

ACKER, District Judge.

The court has for consideration the oral motion offered by Gerald Wayne Daniel after a mistrial was declared on the question of his guilt or innocence. When the

jury failed to reach a verdict as to Daniel, Daniel's counsel orally moved for a judgment of acquittal or, in the alternative, for a dismissal of the indictment as to Daniel. Thereafter, Daniel filed a formal written "Motion to Reconsider Defendant's Motion to Suppress In-court Identification and/or Motion for Judgment of Acquittal." The procedural and evidentiary facts bearing on Daniel's post-trial motion are these:

### Pertinent Facts

1. The original indictment was brought against Ronald Jerome Hayes, et al., in the above-numbered criminal action. The indictment was filed on June 30, 1988. It named as defendants several persons by their given names and made certain charges against somebody called " 'Jay' (being a Black Male approximately 20 to 30 years of age, whose identity is otherwise unknown to the Grand Jury)." Nowhere in the original indictment did the name "Gerald Wayne Daniel," or any similar name, appear.

2. On September 2, 1988, a superseding indictment was filed. It used exactly the same designation, "Jay," and nowhere mentioned anyone by the name of "Gerald Wayne Daniel." On the same day, a warrant was issued ordering the arrest of the said " 'Jay' (being a Black Male approximately 20–30 years of age, address unknown)." Although "Jay"'s address was unknown to the Grand Jury, the warrant was somehow purportedly executed by Fredrich Gasbarro, DEA officer, on September 20, 1988, and was filed with the Clerk on September 21, 1988. Neither the warrant nor the return mentions anybody by the name of Gerald Wayne Daniel. The court, nevertheless, deduces from subsequent events that the warrant was served on Gerald Wayne Daniel.

3. On September 21, 1988, for some unexplained and inexplicable reason, Gerald Wayne Daniel was placed on bond by a magistrate, the bond suddenly obtaining the style "United States of America v. Gerald Wayne Daniel, aka 'Jay' ". A miraculous, subtle metamorphosis in the case against somebody named "Jay," had be-gun, purporting to turn it into a case against Gerald Wayne Daniel. At the initial appearance on September 21, 1988, the magistrate noted under his "Remarks":

It was established by testimony of DEA, Fred Gasbarro, that 'JAY' and Gerald Wayne Daniel are one and the same.

This judicial expression cannot constitute an adjudication of identity between "Jay" and Daniel. Not only did Agent Gasbarro never actually see "Jay" distribute cocaine (meaning that Gasbarro before the magistrate was testifying purely by hearsay), but the burden was then on the government to prove Jay's identification *to a jury and beyond a reasonable doubt.* The connection between "Jay" and some black, male, human being with a legal name was one of the crucial ultimate questions of fact reserved for jury resolution, if and when the proper charge appeared.

4. On September 28, 1988, the clerk notified Daniel that he was set for arraignment on October 7, 1988. Although the word "Daniel" nowhere appeared in the indictment, this notice innovatively used the style, "United States of America v. Jay (a/k/a Gerald Wayne Daniel)." Of course, the clerk could not have amended the indictment even if he had been asked to amend it.

5. On October 7, 1988, at the purported arraignment of Daniel, J. Lester Alexander, attorney, entered a special appearance for "the defendant Gerald Wayne Daniel for the sole purpose of representation at his arraignment hearing only." Later Alexander sought leave to withdraw.

6. On October 11, 1988, the magistrate entered an order setting Alexander's motion "to withdraw from the representation of Jay (a/k/a Gerald Wayne Daniel)".

7. On October 12, 1988, Alexander filed several motions on behalf of "the Defendant, Gerald Wayne Daniel, aka 'Jay.' "

8. On October 17, 1988, the United States filed what it styled "Government's Notice of Offense and Demand for Alibi," and therein said, *inter alia:*

Government submits that defendant "Jay" (Gerald Wayne Daniel) did distrib-

ute cocaine at Hayes' 76 Station at 14th Place and Pearson Avenue SW, Birmingham, Alabama, from between approximately 5:15 p.m. until approximately 5:45 p.m. on June 23, 1987.

9. On October 17, 1988, Alexander's motion for leave to withdraw as attorney for Daniel was granted.

10. On October 18, 1988, Roger C. Appell, attorney, was appointed by the magistrate to represent Daniel as an indigent. The notice to Mr. Appell of his appointment contained the following heading:

"Re: *United States of America v. Gerald Wayne Daniel.*" The notice did not refer to "Jay" or otherwise describe Mr. Appell's client as black, male, or of any particular age group.

11. On October 21, 1988, Appell filed for "defendant Gerald Wayne Daniel" a response to the Government's discovery requests.

12. On December 5, 1988, the case went to trial apparently without Daniel's counsel's realizing and without the court's realizing the fact that the indictment had never been amended nor otherwise particularized to name Daniel as a defendant.

13. After all of the evidence had been offered and received, the government presented to the court proposed jury verdict forms. Consistent with the wording of the indictment, the form submitted to the jury by which it found "JAY" guilty as to Count One read as follows:

We the jury find the defendant,
"JAY"
guilty as charged in Count One and find that he conspired to possess with the intent to distribute and to distribute cocaine in the amount of:

X 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine.

_____ 500 grams or more but less than 5 kilograms of a mixture or substance containing a detectable amount of cocaine.

_____ less than 500 grams of a mixture or substance containing a detectable amount of cocaine.

/s/ _____
FOREMAN OF THE JURY

14. "JAY" was only charged in Counts One and Six. The government's verdict form for Count Six, as for Count One, used only the name "Jay." If the jury had found "Jay" guilty, using the government's form, the verdict would have been a nullity, because it would have been laughable to impose sentence on a person never mentioned in the indictment.

15. Realizing that an adjudication using the forms prepared by the government would be meaningless and could not constitute a verdict for or against Gerald Wayne Daniel, the court, without any authority or request, prepared and submitted the following special interrogatory to the jury to go along with the government's forms as to "Jay."

ONLY IF THE JURY FINDS "JAY" GUILTY OF ANY COUNT OR COUNTS OF THE INDICTMENT, ANSWER THE FOLLOWING QUESTION:

Is "JAY" one and the same person as GERALD WAYNE DANIEL?

YES _____    NO _____

16. During trial it became quite clear that at least two months prior to the superseding indictment, the government possessed every witness and piece of evidence it used at trial in its unsuccessful attempt to equate Gerald Wayne Daniel with "Jay." Yet, the superseding indictment conspicuously failed to use the traditional language, "Gerald Wayne Daniel, a/k/a Jay." Perhaps the explanation is that the government was blissfully asleep. Perhaps the explanation is that the government knew at the time of the superseding indictment that it lacked the evidence to nail down an equation between Daniel and "Jay" in the way necessary to meet its burden of proving the identification "beyond a reasonable doubt," and that the government was hoping to discover some new evidence between indictment and trial, but failed to discover any.

17. At trial, the government only offered two identification witnesses who had ever heard the name "Jay" employed in

reference to a black male alleged to have been present on June 23, 1987 at Ronald Hayes' gasoline station during a sale of cocaine in which the primary defendant, Ronald Hayes, participated. One of these witnesses was John Thomas Kirby, an admitted drug addict, convicted felon and informer whose testimony would be suspect if he had identified Gerald Wayne Daniel as being the "Jay" he had heard mentioned and had seen during the one cocaine transaction. However, on its direct examination of Kirby, the government did not even ask him to make an in-court identification of Daniel. On cross-examination the reason became apparent. Kirby admitted that he had identified Daniel's brother earlier as being the "Jay" he saw passing cocaine, and that he could not identify the Daniel in the courtroom as "Jay." The other government witness on this subject crucial to Daniel's guilt or innocence was Police Officer Emmett Doggrell, an undercover investigator who saw "Jay" only once, very briefly, on June 23, 1987, approximately a year before Doggrell was asked by Agent Gasbarro to look at a single photograph of Daniel appearing on Daniel's driver's license. At trial the government argued that this display of a single photograph was not unduly suggestive and therefore did not require the suppression of Doggrell's testimony under the instructions of *United States v. Cannington*, 729 F.2d 702, 711 (11th Cir.1984); *Hudson v. Blackburn*, 601 F.2d 785, 788 (5th Cir.1979); and *United States v. Cueto*, 611 F.2d 1056, 1064 (5th Cir.1980). All of these binding appellate opinions frown on the display of a single photograph as a means of inducing an identification. This display of one picture of Daniel narrowed the odds so much in favor of a positive identification as to violate fundamental fairness. The reasons for the judicial scowl where identifications are made under such a circumstance are obvious. The government argued that Agent Gasbarro, who displayed Daniel's driver's license photo to Officer Doggrell, only asked Doggrell if he had ever seen this person before, after which Doggrell identified him as "Jay." From this the government argued that there was nothing said by Gasbarro to alert Doggrell that it was the service station drug sale that was being inquired about. This is an implausible argument. It apparently also was implausible to some of the jurors, because the jury, although finding that someone called "JAY" was guilty of the crimes charged in Counts One and Six, could not reach unanimity on the special interrogatory. This fact necessitated the declaration of a mistrial as to the putative "defendant" Gerald Wayne Daniel.

### Conclusions

■ Frankly, this court, including its magistrates, were asleep at the switch when they allowed this case to proceed to trial against Gerald Wayne Daniel when he was never named in the indictment. Apparently, the court-appointed attorney for Daniel was under the understandable impression that his client was somehow charged in the indictment. The truth is that until the last bloody minute everyone, including this court, was acting under a false belief that some of the jurors obviously refused to share. An indictment cannot be amended by implication. An individual named Gerald Wayne Daniel cannot be transmogrified into "Jay" by slow, imperceptible increments, or by thaumaturgy in the clerk's office, or at the magistrate's bench.

■ Rule 7, F.R.Cr.P., expressly provides for the amendment of an information, *but not of an indictment.* Something which cannot be done formally surely cannot be done informally, or by waiver, or by unhappy accident, or by insinuation. The Eleventh Circuit holds that amendments to an indictment are freely allowed if they are just a matter of form, such as to correct a "misnomer." *United States v. Johnson*, 741 F.2d 1338, 1341 (11th Cir.1984), cert. denied, 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985). The total absence of the name "Gerald Wayne Daniel" in the indictment, without any effort having been made by the government to amend, readily distinguishes this situation from that in *United States v. Johnson*. This was not just a piece of innocuous, forgivable sloppi-

ness. It was a substantive pleading error which cannot be ignored or patched up by the clerk, by the magistrate, or by the judge. This judge should have never joined the effort to patch the unpatchable by devising the special interrogatory.

In fact, the court should have granted Gerald Wayne Daniel's earlier motion to suppress Officer Doggrell's identification testimony because of its insubstantial and contrived nature. It certainly bore several of the indicia of unreliability. Some jurors obviously found Officer Doggrell's identification testimony unreliable. This means to the court that even if the indictment could somehow be *deemed* to have been amended to name Gerald Wayne Daniel as a defendant (although the court can find no precedent for such a deemer), the fact of a mistrial on the identification question establishes to the satisfaction of this court that there must be "reasonable doubt" about the identity between Gerald Wayne Daniel and "Jay."

For the foregoing reasons, Gerald Wayne Daniel's post-trial motion for judgment of acquittal is due to be, and hereby is, GRANTED. Gerald Wayne Daniel is adjudicated NOT GUILTY of any and all of the offenses charged to have been committed by "JAY."